IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JAMES CHARLES                                                                                           PLAINTIFF

        v.                              Civil No. 6-08-cv-06095

LT. FREDDIE OTTS, Ouachita River
Correctional Unit; JUSTINE MINOR,
Disciplinary Hearing Officer, Arkansas
Department of Correction; JAMES
GIBSON, Disciplinary Hearing Officer,
Arkansas Department of Correction;
RUTH CLARK, Internal Affairs Investigator,
Arkansas Department of Correction; M.D. REED,
Warden, Ouachita River Correctional Unit;
MARK WARNER, Chief Security Officer,
Ouachita River Correctional Unit; and
LARRY NORRIS, Director, Arkansas
Department of Correction                                                                                 DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

James Charles (hereinafter Charles) filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2007), the Honorable Robert T. Dawson, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation. The case is before me for a determination of whether service of process should issue.

### I. BACKGROUND

Charles is currently an inmate of the Maximum Security Unit of the Arkansas Department of Correction located in Tucker, Arkansas. At the time of the incident that is the subject of the complaint, he was an inmate of the Ouachita River Correctional Unit in Malvern, Arkansas.

According to the allegations of the complaint (Doc. 2) and addendum (Doc. 8), Charles was accused by inmate W. Dillingham of forcing him to perform oral sex on Charles on May 13, 2008. Charles was interviewed by the Arkansas State Police. He was not charged with a criminal offense.

He was written a major[1] disciplinary on May 13, 2008, by Lt. Freddie Otts. He was charged with the following: failure to obey the verbal or written orders of staff; rape or forced sexual act; assault any willful attempt or threats to inflict injury upon the person of another; making sexual proposals to another person (second or subsequent offense within six months in class a); and any act or acts defined as felonies or misdemeanor by the State of Arkansas.

He received notice of the disciplinary charges against him. The disciplinary hearing action report indicates the hearing occurred on May 21, 2008. Charles made a statement at the hearing. The report sets forth a written synopsis of the hearing officer's factual basis for the decision. It also states that evidence purporting to exonerate Charles was discounted based on the acceptance of a staff eye witness report. Charles was found guilty of all offenses given thirty days of punitive isolation to serve and his "GT"[2] class reduced to IV.

Charles maintains there was no proper investigation into the alleged sexual assault. He states no area was sealed off and no evidence gathered. When he was interviewed by the state police, Charles states no witness was present.

With respect to the disciplinary hearing, Charles maintains there was no testimony or written statement from Dillingham. Charles maintains his due process rights were violated when the hearing

---

[1] A rule violation of such magnitude that a finding of guilty could result in penalties including loss of credit for programs, placement in a "class" of inmates temporarily ineligible for parole, or punitive detention.

[2] There is nothing on the disciplinary hearing action report to indicate what GT stands for. Charles does not indicate what GT stands for.

officer convicted him without hearing the testimony of Dillingham based on the report of a staff member.

With respect to Ruth Clark, he states she came to give him a polygraph examination. However, once he told her that he had been interviewed by the Arkansas State Police and that the allegations didn't have merit, Charles states she didn't give him the examination to prove his "innocense." Charles states she said she would have to get back to him and never did.

As relief, Charles requests reversal of the disciplinary and credit for the program he was active in. Charles indicates he was in the Reduction of Sexual Victimization Program. If it hadn't been for this disciplinary violation, he indicates he would have successfully completed this program in December.

## II. DISCUSSION

Charles' claims are subject to dismissal. Charles was given notice, an opportunity to be heard, an opportunity to present evidence, and an opportunity to appeal. Due Process requires no more. *See Wolff v. McDonnell*, 418 U.S. 539, 563-66, 570, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974).

Moreover, federal review of prison disciplinary decisions is limited and "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board." *Superintendent, Massachusetts Correctional Inst. v. Hill*, 472 U.S. 445, 455, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985). *See also Goff v. Dailey*, 991 F.2d 1437 (8th Cir. 1993). "[D]isciplinary actions may be taken-and often they are-based only on a guard's report. Even when there is substantial evidence to the contrary, the committee may find a guard's report to be credible and therefore take disciplinary action." *Hrbek v. Nix*, 12 F.3d 777, 781 (8th Cir. 1993)(*citing Hill*, 472 U.S. at 456).

The requirements of Due Process were complied with because the *Wolff* hearing "ensures that the inmate has an opportunity to persuade an impartial decisionmaker, who must give written justification for his decision, that discipline is not warranted. This is the interest protected by the Constitution." *Hrbek*, 12 F.3d at 781 (*citing Goff*, 991 F.2d at 1441-42). In this case, Charles' allegations and the documents attached to the addendum to the complaint establish the requirements of *Wolff* were met and some evidence supports the decision of the disciplinary board. Due Process requires no more.

Finally, there is no federal constitutional right to undergo a polygraph examination. *Cf. United States v. Scheffer*, 523 U.S. 303, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998)(Per se rule against admission of polygraph evidence in court martial proceedings did not violate Fifth or Sixth Amendment rights of accused to present a defense). *See also Kuttab v. Jeter*, 132 Fed. Appx. 23 (5th Cir. 2005)(Rejecting claim by prisoner that he should have been allowed to take a polygraph examination. Noting no federal constitutional right is violated by the exclusion of such evidence and that the prison's refusal was based on an interest in avoiding burdensome administrative requirements). Thus, in not responding to his request for an examination, Ruth Clark did not violate Charles' rights.

### III. CONCLUSION

I therefore recommend that this case be dismissed as the claims are frivolous and/or for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii)(IFP action may be dismissed on such grounds at any time).

**Charles has ten days from receipt of the report and recommendation in which to file**

**written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  Charles is reminded that objections must be both timely and specific to trigger de novo review by the district court.**

     DATED this 19th day of March 2009.

                                            /s/ Barry A. Bryant  
                                             HON. BARRY A. BRYANT  
                                             UNITED STATES MAGISTRATE JUDGE